UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DILLON McCANDLESS,<br><br>Defendant. | Case No. 4:17-cv-00188-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Dillon McCandless's Motion for Compassionate Release. Dkt. 53, 62 (renewed). The timeliness issue raised by the Government is now moot, therefore, the Court will not address it herein. After carefully considering the remaining issues, the Court determines that an evidentiary hearing is not necessary on the motion. For the following reasons, the Court will deny the motion.

## BACKGROUND

Defendant McCandless robbed the Fort Hall Sage Hill Casino with a sawed-off shotgun that he stole from his brother. Dkt. 42. Before entering the casino, McCandless placed a fake phone call to the police dispatch requesting that the officer on duty at the casino investigate a suspicious vehicle away from the area. When the officer left, McCandless entered the casino with the shotgun and a plastic bag. He told the police that he would have shot the officer had he been inside the casino. When demanding that the teller place money in the bag, McCandless racked a round out of the shotgun. McCandless plead guilty to Robbery and Use of a Firearm in Furtherance of a Crime of Violence. Dkt. 37. At the filing of the present motion, he had served 34 months of his 105-month sentence.

Prior to his conviction, McCandless was diagnosed with Paranoid-Schizophrenia. He has since been diagnosed with schizophrenia on multiple occasions. Dkt. 64-4 at 20. McCandless has been transferred to multiple facilities throughout his incarceration as a result of his psychiatric issues. He has refused to take his anti-psychotic medications, been placed on suicide watch for threatening to kill himself, expressed irrational thoughts to his family of being poisoned, and claimed he heard a woman's voice speaking to him in his cell. McCandless also suffers from hypertension and obesity. He sent a compassionate release request to

both the warden at FCI Sheridan and FCI Butner. The home confinement request was denied because the BOP requires an inmate to have served at least 50% of his sentence, and McCandless has a high recidivism risk score and multiple incident reports. Dkt. 64-3 at 3.

In the present motion, McCandless moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction on the grounds that he is not able to receive proper treatment for his mental health issues and is at risk of the threat posed by the COVID-19 pandemic. Dkt. 53, 62.

## LEGAL STANDARD

A motion for compassionate release may be made by either the Director of the Bureau of Prisons or by a defendant who has fully exhausted administrative remedies within the Bureau of Prisons.[1] In order to modify a sentence and grant compassionate release, a district court must engage in a three-step process. First, it must consider the 18 U.S.C. § 3553(a) factors. Second, the court must find that "extraordinary and compelling reasons warrant such a reduction." See 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has determined that "extraordinary

---

[1] Section 3582 was amended by the First Step Act of 2018, PL 115-391, Dec. 21, 2018. 132 Stat 5194. Prior to this amendment, the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons.

**MEMORANDUM DECISION AND ORDER - 3**

and compelling reasons" to release a defendant from BOP custody include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[2] USSG § 1B1.13. Third, the Court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." 18 U.S.C. § 3582(c)(1)(A).

## ANALYSIS

### A. Extraordinary and Compelling Reasons to Warrant a Reduction

The standard of "extraordinary and compelling reasons" warranting a sentence reduction is met if the defendant is:

> (I) suffering from a severe physical or medical condition
> (II) suffering from a serious function or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[2] U.S.S.G. § 1B1.13 has not been amended since the First Step Act to reflect that both defendants and the BOP may move for compassionate release. However, "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons that may warrant a reduction in sentence." *United States v. Gonzales*, WL 1536155 at *2 (E.D. Wash Mar. 31, 2020).

USSG § 1B1.13, cmt. n.1(A)(ii).

1.   **Susceptibility to COVID-19**

McCandless's obesity and hypertension make him more susceptible to the COVID-19 virus.[3] McCandless is currently housed in FCI Butner, where 208 inmates and 13 staff have tested positive for COVID-19 as of April 29, 2020. Though the BOP has implemented a COVID-19 Action Plan, the Court recognizes that, despite the best efforts of BOP officials, the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolate at home.[4] However, as explained below, the other circumstances surrounding McCandless's incarceration and the inadequacy of the proposed release plan weigh against a finding of an extraordinary and compelling reason warranting a sentence reduction.

2.   **Mental Health Issues**

In addition, McCandless suffers from severe mental health issues. In the

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019- ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated July 17, 2020).

[4] "Prisons are epicenters for infectious disease because of the higher background prevalence of infection, the higher levels of risk factors for infection, the unavoidable close contact in often overcrowded, poorly ventilated, and unsanitary facilities, and the poor access to health-care services relative to that in community settings." Stuart A. Kinner, et. Al., *Prisons and custodial settings are part of a comprehensive response to COVID-19*, THE LANCET (Mar. 17, 2020), https://www.thelancet.com/journals/lanpub/artcile/PIIS2468-2667(20)30058-Xfulltext.

Investigation Report, the Probation Officer Katie Hedrick reported that McCandless regularly experiences hallucinations and has issues with fighting and anger. Dkt. 64-2 at 3. McCandless was also considered at risk for suicide, and his father reported that he appeared incoherent during a phone call. *Id.* However Hedrick also found that, though the medical staff made a very serious effort to convince McCandless to engage in mental health treatment, he has refused treatment on multiple occasions. *Id.* at 3–4. He refused to take a higher dosage of medication as required by clinical staff, and declined any antipsychotic medication treatment. *Id.* at 4. The clinical staff noted, "he will likely be considered for admission to an FMC (federal medical center) for consideration of forced medication." *Id.*

Further, Hedrick concluded that the proposed plan for McCandless's release is "riddled with unknowns and is not sufficient to meet the very serious needs of the defendant." *Id.* at 5. McCandless's mother reported that McCandless would be admitted to State Hospital South in Blackfoot for three to six months until he is stable, after which he will be closely monitored by his parents and other family members. *Id.* at 2. Though well-intentioned, Mrs. McCandless's understanding of the hospital admission process did not align with the information reported by the administrator of the hospital. *Id.* In order to be committed to the hospital,

McCandless would need to be hospitalized in a mental health unit and deemed Dangerously Mentally Ill – a designation only given to patients who are gravely disabled and suicidal or homicidal in nature). *Id.* The hospital also has not accepted a voluntary patient in several years given the standing waitlist for involuntary patients. Moreover, the average stay at the facility is only 35 days. *Id.* Finally, the Court is not convinced that McCandless's family members would be able to adequately supervise him. Before the casino robbery, Mrs. McCandless noticed the decline in her son's mental health and attempted to help him, yet she was unable to stop him from committing the crime. Dkt. 42.

Despite the severity of McCandless's mental health issues, the Bureau of Prisons shows a willingness to attend to McCandless's mental health needs and is capable of meeting those needs should he cooperate. Moreover, if he continues to refuse to cooperate, the BOP is in a better position to address his needs than his parents.

B.     **Danger to the Community and § 3553(a) Sentencing Factors**

The Sentencing Guidelines instruct that a request for compassionate release may only be granted if "the defendant is not a danger to the safety of any other person or to the community, provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13. The §3553(a) sentencing factors are also applicable in this analysis. *See* §

3582(c)(1)(A).

Here, both the danger posed by McCandless and the § 3553(a) sentencing factors weigh against a grant of compassionate release. McCandless was categorized as having a "high risk of recidivism" and deemed as posing the "greatest severity" of risk to public safety. Dkt. 64-2 at 3. He committed a violent crime – robbery with a firearm – and stated his willingness to kill a police officer should one have been at the scene. At this time, he has only served approximately 40 months of his 105-month sentence. Moreover, McCandless has accrued a lengthy disciplinary record while in BOP custody and has a history of violence. *See* Dkt. 64-2 at 4–5. On separate occasions, he poured gasoline on the floor of his parents' house and lit it on fire, assaulted his father, and threatened to stab his mother with a screwdriver. Dkt. 42 at 10-11. The proposed release plan involves placing McCandless back in the same environment in which these violent outbursts and the crime for which he is currently incarcerated occurred.

## CONCLUSION

For the foregoing reasons, the Court finds that, despite his increased risk of contracting COVID-19 and the severity of his mental health issues, McCandless has not met the requirements necessary to warrant a reduction of his sentence. The Court will deny the motion.

## ORDER

**IT IS ORDERED that** Defendant's Motion for Compassionate Release (Dkt. 53, 62) is **DENIED**.

DATED: August 3, 2020

B. Lynn Winmill
U.S. District Court Judge